**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

MACEO SPATES, # 1199722

               Petitioner,

v.                                          ACTION NO. 2:11cv284

HAROLD W. CLARKE,
Director of the Virginia Department of Corrections,

               Respondent.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

      This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. § 2254. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c)(1) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. The Court recommends GRANTING IN PART and DENYING IN PART the petition for the writ of habeas corpus.

## I. STATEMENT OF THE CASE

**A. Background**

      On May 8, 2007, following a jury trial, Petitioner Maceo Spates ("Petitioner" or "Spates") was convicted of abduction, rape, unlawful wounding during the commission of a felony, and petit larceny in the Circuit Court of the City of Virginia Beach. On August 15, 2007, pursuant to this conviction, he was sentenced to serve thirty-four years in jail. It is this conviction and sentence that Petitioner challenges in the present action.

      Petitioner filed a direct appeal to the Virginia Court of Appeals, in which he alleged (1) the trial Court violated his Fourteenth Amendment right to Due Process of Law in convicting

him based on insufficient evidence as a matter of law, (2) the trial court erred in denying petitioner's motion for mistrial based on a juror overhearing a conversation in the courtroom between lawyers and witnesses in which prejudicial information was disclosed, and (3) Petitioner did not waive his right to counsel. Resp't's Mot. to Dismiss Ex. 2, ECF No. 10-2, at 18, 34-35. On September 10, 2008, the Court of Appeal's affirmed Spates' conviction. Id. at 1-6.

On July 27, 2009, Spates filed a petition with the Virginia Beach Circuit Court, requesting a writ of habeas corpus. Spates challenged the legality of his confinement, alleging (1) he was denied counsel at trial, (2) he was denied effective assistance of appellate counsel, (3) his for cause challenge was improperly denied, and (4) the jury instructions given at trial diluted the reasonable doubt standard of proof. Resp't's Mot. to Dismiss Ex. 5, ECF No. 10-5, at 2. On October 27, 2009, the Circuit Court dismissed claims (1), (3), and (4) with prejudice, stating that those claims were not cognizable having not been addressed by the Supreme Court of Virginia. Id.  As to claim (2), the Circuit Court granted Spates relief in the form of a belated appeal to the Supreme Court, as Petitioner's appeal was never taken to the Supreme Court of Virginia after being denied by the Court of Appeals. Id. at 3.

On January 27, 2010, pursuant to the circuit court's finding and with the assistance of George Turpin, Esq., Spates filed a petition for appeal in the Supreme Court of Virginia. Resp't's Mot. to Dismiss Ex. 4, ECF  No. 10-4, pp. 2-26. Spates alleged that the Court of Appeals erred by affirming the trial court's (1) ruling that there was sufficient evidence to convict Spates, (2) denial of Petitioner's motion for a mistrial based upon a juror overhearing a conversation, and (3) refusal to afford Petitioner his right to counsel after he requested counsel numerous times at the time of trial. Id. at 3. On April 27, 2010, the Supreme Court of Virginia refused the petition for appeal. Id. at 1.

On July 12, 2010, Spates filed a petition with the Virginia Beach Circuit Court, again requesting a writ of habeas corpus. ECF No. 10-5. On October 15, 2010, the court dismissed the petition with prejudice. Id. at 4. Petitioner did not file a petition for appeal to the Supreme Court of Virginia following this dismissal.

Spates then filed a petition for a writ of habeas corpus with this Court on May 19, 2011. ECF No. 1. On October 4, 2011, Respondent filed a Rule 5 Answer and Motion to Dismiss. ECF Nos. 8 and 9. On November 25, 2011,[1] Spates filed his Response to the Motion to Dismiss. ECF No. 14. Accordingly, this matter is ripe for adjudication.

On January 17, 2012, this Court ordered Respondent to produce the transcript of Petitioner's February 12, 2007 pre-trial hearing, held before the Honorable A. Bonwill Shockley ("Judge Shockley"), in the Circuit Court for the City of Virginia Beach. ECF No. 15. Respondent submitted the transcript to the Court on February 2, 2012. ECF No. 16. Respondent also attempted to mail a copy of the transcript to the Petitioner on this date, but submitted the transcript to an incorrect address for the Petitioner. Having not received the transcript, Petitioner filed a Motion for Declaratory Judgment on February 23, 2012, asking this Court to reverse his conviction and enter judgment for Petitioner due to Respondent's failure to provide the transcript as ordered. ECF No. 17. Also on February 23, 2012, Respondent filed a Notice indicating the transcript had been mailed to Petitioner at his correct address. ECF No. 18. Respondent did not otherwise respond to Petitioner's motion, and this matter is also ripe for adjudication. The Court recommends DENYING Petitioner's Motion for Declaratory Judgment as frivolous.

---

[1] On October 24, 2011, Spates filed a Motion for an Extension of Time to file his Response to the Motion to Dismiss. ECF No. 12. The motion was granted, and Petitioner was given until November 28, 2011 to file his response. ECF No. 13.

**B. Grounds Alleged**

Spates asserts that he is entitled to relief under 28 U.S.C. § 2254 because the Court of

Appeals of Virginia erred by affirming the trial court's:

> (1) ruling that there was sufficient evidence by which to convict
> Spates;
>
> (2) denial of Spates' motion for a mistrial based upon a juror
> overhearing a conversation in the courtroom between the lawyers
> and witnesses in the case and;
>
> (3) refusal to afford Petition his right to counsel after requesting
> counsel numerous times before trial.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A. Exhaustion**

In order for this Court to address the merits of this habeas petition, all of Petitioner's

claims must be exhausted.  See 28 U.S.C. § 2254(b) (2010).  The exhaustion requirement is

satisfied when the "essential legal theories and factual allegations advanced in federal court . . .

[are] the same as those advanced at least once to the highest state court."  Pruett v. Thompson,

771 F. Supp. 1428, 1436 (E.D. Va. 1991), aff'd, 996 F.2d 1560 (4th Cir. 1993).  For a claim to be

considered exhausted, the claim must be "fairly presented to the state courts," meaning both the

"operative facts and the controlling legal principles must be presented to the state court."

Matthews v. Evatt, 105 F.3d 907, 910-11 (4th Cir. 1997) (citations omitted).  Exhaustion may be

accomplished either on direct appeal or in post-conviction proceedings.  See O'Sullivan v.

Boerckel, 526 U.S. 838, 844 (1999) (citing Brown v. Allen, 344 U.S. 443, 447 (1953)); see also

Skipper v. French, 130 F.3d 603, 610 n.4 (4th Cir. 1997). Having been raised before the Supreme

Court of Virginia in Spates' habeas petition, all of Spates' claims have been exhausted.

**B. Procedural Default: Ground (1)**

A federal court may not review constitutional claims when a state court has declined to consider the Petitioner's claim on the merits on the basis of an adequate and independent state procedural rule. <u>Burket v. Angelone</u>, 208 F.3d 172, 183 (4th Cir. 2000). A rule is deemed "adequate" if it is regularly or consistently applied by a state court and "independent" if it does not "depend on a federal constitutional ruling." <u>Fisher v. Angelone</u>, 163 F.3d 835, 844 (4th Cir. 1998). Generally speaking, a "violation of firmly established and regularly followed state rules" will be adequate to bar federal review. <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002). A federal habeas court does not have authority to question whether the court properly applied its own law. <u>Sharpe v. Bell</u>, 593 F.3d 372, 377 (4th Cir. 2010).  Accordingly, a federal court may not hear a 2254 claim if a state court already disposed of the claim on adequate and independent state law grounds, unless a petitioner can show cause and prejudice for, or a fundamental miscarriage of justice resulting from, failure to comply with the applicable rule.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). Hence, Ground (1) of Spates' petition is procedurally defaulted and may not be reviewed by this Court.

### i. Sufficiency of Evidence: Rape, Unlawful Wounding, and Abduction

In denying Spates' petition on direct appeal, the Court of Appeals of Virginia held that Rule 5A:18 of the Rules of the Supreme Court of Virginia, which provides that "no ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling," barred his sufficiency of evidence claim from review. <u>Spates v. Commonwealth of Virginia</u>, No. 2151-07-1, per curiam op. at 2 (Va. Ct. App. Sept. 10, 2008). Because Spates challenged the sufficiency of evidence only on appeal, and not at the time of the initial ruling in the trial court, the Court of Appeals refused to consider the

claim.

Whenever a procedural rule is "derived from state statutes and *supreme court* rules . . . the rule is necessarily 'firmly' established," meeting the <u>Lee</u> standard and barring federal review. <u>O'Dell v. Netherland</u>, 95 F.3d 1214, 1241 (4th Cir. 1996), <u>aff'd</u>, 521 U.S. 151 (1997) (emphasis added). Accordingly, Rule 5A:18 is an adequate and independent state ground, and review of Spates' claim is prohibited in this Court.

### ii. Sufficiency of Evidence: Petit Larceny

In dismissing his assertion that there was insufficient evidence to convict Spates of petit larceny, the Court of Appeals of Virginia again used the Rules of the Supreme Court of Virginia to dispose of the claim. While conceding that Spates had properly preserved the issue for appellate review, the Court of Appeals ultimately refused to consider the claim pursuant to Supreme Court of Virginia Rule 5A:20(e), which requires that each assignment of error in an appellate petition must contain the "standard of review and the argument – including principles of law and the authorities . . . ." and Supreme Court Rule of Virginia Rule 5A:12(c)(ii), which mandates that an "assignment of error that . . . merely states that the judgment . . . is contrary to the law and [that] the evidence is not sufficient . . . shall be dismissed."

In his petition for appeal, Spates failed to cite any law or authority, merely recounting the witness testimony from trial and asserting that not enough credible evidence existed for his conviction to stand. <u>Spates v. Commonwealth of Virginia</u>, No. 2151-07-1, Pet. for Appeal (Va. Ct. App. Jan. 2, 2008). Under Virginia law, and in the face of the Supreme Court Rules enunciated above, mere unsupported declarations of error do not allow for appellate consideration. <u>See, e.g.</u>, <u>Commonwealth v. Brown</u>, 687 S.E.2d 742, 745 (Va. 2010) (holding that, where a party fails to follow the procedures set forth in Rule 5A:20(e) in bringing a claim,

such a claim is not properly before the Court of Appeals of Virginia and cannot be addressed);

See also Lewis v. Bailey, 2011 WL 3273232 (Va. Ct. App. Aug. 2, 2011) (holding that failure to

comply with Rule 5A:20(e) is "significant" and requires the refusal to address a non-compliant

issue).

The Court of Appeals of Virginia refused to address the merits of the claim, citing

another procedural rule of the Supreme Court of Virginia. Accordingly, Spates' assertion that

insufficient evidence exists upon which his petit larceny conviction may stand is also

procedurally defaulted.

## C. Merits

### i. Standard of Review

Pursuant to Title 28 of U.S.C. § 2254, a federal court may not grant relief on any claim

that the Supreme Court of Virginia adjudicated on the merits[2] unless the Supreme Court of

Virginia's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as established by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (2010).

---

[2] The Virginia Supreme Court is not required set forth findings of fact and conclusions of law in its disposition of a claim for the claim to be "adjudicated on the merits," Wright v. Angelone, 151 F.3d 151, 156-57 (4th Cir.1998). See also Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011) (confirming that "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'"). The Supreme Court of Virginia rejected Petitioner's appeal on April 27, 2010 without stating the reasons. However, the Court of Appeals addressed the merits of Petitioner's claim when denying Spates' petition for appeal on September 10, 2008. Thus, the Court of Appeals issued the last reasoned decision on the merits, and this Court may address the merits of Spates' claim.

The Supreme Court has explained that this statute "plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000) (citing H.R. CONF. REP. No. 104-518, at 111 (1996)). Consequently, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Id. at 389. This Court may assess, under the same deferential standards of 28 U.S.C. § 2254, the rationale of the lower state court opinion upon which the Supreme Court of Virginia relied in rejecting petitioner's appeal. Bell v. Jarvis, 236 F.3d 149, 158 (4th Cir. 2000).

### ii. Ground (2): Spates' Motion for a Mistrial

An accused has the constitutional right to a fair trial consisting of impartial and indifferent jurors. Turner v. States of Louisiana, 379 U.S. 466, 471 (1965). A juror is impartial if he or she may "lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvin v. Dowd. 366 U.S. 717, 723 (1961). Should the impartiality of a juror be in question, the appropriate remedy is a "hearing in which the defendant has the opportunity to prove actual bias." Smith v. Phillips, 455 U.S. 209, 215 (1982). Therefore, due process does not require a new trial each time a juror has "been placed in a potentially compromising situation." Id. at 217.

A trial court's factual findings regarding juror impartiality are presumed to be correct under 28 U.S.C. § 2254(d). Id. at 218. This Court may only disturb such findings if the presumption is overcome by convincing evidence. Id. Accordingly, the ultimate question is "whether there is fair support in the record for the state courts' conclusion that the juror here would be impartial." Patton v. Yount, 467 U.S. 1025, 1038 (1984).

8

In the highest reasoned state court opinion, the Court of Appeals determined that the trial court did not abuse its discretion in denying Spates' motion for a mistrial. ECF No. 10-2, p. 5. The Court of Appeals stated:

> The trial court interviewed the juror who indicated he heard the words "defense" and "change" and then "immediately shut his ears." The trial court concluded the juror did not hear the whole statement and that appellant was not prejudiced.
>
> "Whether to grant a mistrial rests within the sound discretion of the trial judge, and his or her decision may not be overturned unless a manifest probability exists that the denial of a mistrial was prejudicial." Hall v. Commonwealth, 14 Va. App. 892, 902, 421 S.E.2d 455, 462 (1992) (*en banc*). Nothing in the record indicates the court's denial of a mistrial was prejudicial. Accordingly, we find no abuse of discretion in the court's denial of the motion.

ECF No. 10-5, p. 5.

Spates has failed to rebut the presumption of correctness, making only blanket conclusions that his conviction was largely the result of a juror overhearing a conversation between the prosecutor, police detective, forensic analyst, and Spates' standby-counsel. ECF No. 1, p. 20. Spates has failed to prove the ruling of the Court of Appeals of Virginia, and consequently the Supreme Court of Virginia, was contrary to, or an unreasonable application of, the established federal law, nor was it based on an unreasonable determination of the facts presented. 28 U.S.C. § 2254(d). Accordingly, Spates should not be granted federal habeas relief with respect to Ground (2) of his petition.

### iii. Ground (3): Denial of the Right to Counsel

The Sixth Amendment provides, in relevant part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. Const.

amend. VI. This right is a fundamental procedural right that all those accused of crimes enjoy. See, e.g., United States v. Singleton, 107 F.3d 1091, 1095 (4th Cir. 1997). Though only one of many rights an accused person has, it is "by far the most pervasive, for it affects his ability to assert any other rights he may have." Penson v. Ohio, 488 U.S. 75, 84 (1988).

The Supreme Court, however, has recognized that a defendant has the reciprocal constitutional right to proceed without counsel. Faretta v. California, 422 U.S. 806, 807 (1975). These rights undoubtedly are competing and mutually exclusive rights, as an exercise of the self-representation right requires a waiver of the right to counsel. United States v. Frazier-El, 204 F.3d 553, 558 (2000). Because the self-representation right is necessarily at odds with the preeminent right to the aid of counsel, strict limitations have been put in place for waiver of the right to counsel and the exercise of the right to self-representation. The trial court should make a defendant aware of the "dangers and disadvantages of self-representation," so that the record may show he "knows what he is doing and his choice is made with eyes wide open." Faretta, 422 U.S. at 835.  That is, in order for a defendant to represent himself, the trial court must be satisfied that the assertion of the right to self-representation is "(1) clear and unequivocal, (2) knowing, intelligent, and voluntary, and (3) timely." See, e.g. Frazier-El, 204 F.3d at 558.

While the Faretta Court recognized the right of a defendant to represent himself, provided these three requirements are met, it did not enunciate set guidelines detailing the tests or lines of inquiry a trial judge must conduct to ascertain whether a defendant's decision was knowing and intelligent. The Fourth Circuit has held that, while a formalistic and searching inquiry is not necessarily always required, a trial judge must "determine the sufficiency of the waiver from the

record as a whole . . . ." [3] <u>United States v. Gallop</u>, 838 F.2d 105, 110 (4th Cir. 1988).

---

[3] The Bench Book for United States District Judges provides a suggested colloquy to be used by a trial judge when a defendant indicates he or she does not wish counsel. In fact, the Sixth Circuit requires trial judges to follow this model inquiry. <u>United States v. McDowell</u>, 814 F.2d 245, 249-50 (6th Cir. 1987). The Section states:

> If the defendant does not wish counsel: The accused has a constitutional right of self-representation. Waiver of counsel must, however, be knowing and voluntary. This means you must make clear on the record that the defendant is fully aware of the hazards and disadvantages of self-representation. If the defendant states that he or she wishes to represent himself or herself, you should ask questions similar to the following:
>
> (1) Have you ever studied law?
>
> (2) Have you ever represented yourself in criminal action?
>
> (3) Do you understand that you are charged with these crimes: [state the crimes with which the defendant is charged]?
>
> (4) Do you understand that if you are found guilty of the crime charged in Count I, the court must impose an assessment of $100 and could sentence you to as many as ___ years in prison, impose a term of supervised release that follows imprisonment, fine you as much as $__, and direct you to pay restitution? [Ask the defendant a similar question for each crime charged in the indictment or information.]
>
> (5) Do you understand that if you are found guilty of more than one of these crimes, this court can order that the sentences be served consecutively, that is, one after another?
>
> (6) Do you understand that there are advisory Sentencing Guidelines that may have an effect on your sentence if you are found guilty?
>
> (7) Do you understand that if you represent yourself, you are on your own? I cannot tell you or even advise you how you should try your case.
>
> (8) Are you familiar with the Federal Rules of Evidence?
>
> (9) Do you understand that the rules of evidence govern what may or may not be introduced at trial, that in representing yourself, you must abide by those very technical rules, and that they will not be relaxed for your benefit?
>
> (10) Are you familiar with the Federal Rules of Criminal Procedure?
>
> (11) Do you understand that those rules govern the way a criminal action is tried in federal court, that you are bound by those rules, and that they will not be relaxed for your benefit? [Then say to the defendant something to this effect:]
>
> 12) I must advise you that in my opinion, a trained lawyer would defend you far better than you could defend yourself. I think it is unwise of you to try to represent yourself. You are not familiar with the law. You are not familiar with court procedure. You are not familiar with the rules of evidence. I strongly urge you not to try to represent yourself.
>
> 13) Now, in light of the penalty that you might suffer if you are found guilty, and in light of all of the difficulties of representing yourself, do you still desire to represent yourself and to give up your right to be represented by a lawyer?
>
> (14) Is your decision voluntary? [If the answers to the two preceding questions are yes, say something to the following effect:]
>
> (15) I find that the defendant has knowingly and voluntarily waived the right to counsel. I will therefore permit the defendant to represent himself [herself].

While such an examination does not require any particular form of interrogation, it has been established that, at a bare minimum, a trial judge should explain the charges and possible punishments to a defendant before allowing a waiver of right to counsel. Id. The conduct of the accused must then be considered, and the judge should "develop on the record the educational background, age, and general capabilities of the accused," Id. at 110; see also United States v. Singleton, 107 F.3d 1091, 1097 (4th Cir. 1997). Moreover, where a waiver is at all ambiguous or unclear, the trial judge must "ascribe a 'constitutional primacy' to the right to counsel because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation." Frazier-El, 204 F.3d at 559 (internal citations omitted).

Therefore, the Faretta right to self-representation is not without limit where a defendant may unwittingly and unknowingly be foregoing his right to counsel and, with it, the integrity of the trial itself. See Martinez v. Court of Appeal of Cal., 528 U.S. 152 (2000) (holding that the Faretta decision does not absolutely require a criminal defendant be allowed to represent himself on appeal). Indeed, not only may a right to self-representation be waived by a failure to timely assert it, the right may be waived "by subsequent conduct giving the appearance of uncertainty." United States v. Gillis, 773 F.2d 549, 559 (4th Cir. 1985). Based on the foregoing, and after a review of the transcript, the Court finds that Spates' did not waive his right to counsel.

At a pre-trial hearing held before Judge Shockley on February 12, 2007, in the Circuit Court of the City of Virginia Beach, Janee D. Joslin ("Joslin"), attorney for Petitioner, indicated that Spates wished to represent himself. Pre-Trial Hr'g Tr. 2:9-10, ECF No. 16-1.   Spates

---

FEDERAL JUDICIAL CTR., BENCHBOOK FOR U.S. DISTRICT COURT JUDGES SEC. 1.02 (5th ed. 2007).

explained that he wanted to file certain motions before the trial (Pre-Trial Hr'g Tr. 4:3-4), which

Joslin did not feel had any basis in law or fact. Pre-Trial Hr'g Tr. 5:5-6.

Prior to granting Joslin's motion to withdraw, Judge Shockley made minimal inquiry as

to whether Spates' wish to represent himself was knowing and intelligent. Though the transcript

is not entirely void of questioning, the line of inquiry falls below even the minimal standard

required by the Fourth Circuit to ensure a valid waiver of counsel:

> THE COURT: You're sure about this, Mr. Spates?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: You're going to be held to the same standard as if you were an attorney.   You understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You're going to be required to know when to make an objection, the basis of the objection. You're going to need to pick the jury. You're going to need to – well, you're going to need to know everything the lawyers know; and you're not going to be given any extra slack in this. You understand that?
>
> THE DEFENDANT: Yes, ma'am.

Pre-Trial Hr'g Tr. 13:16-14:5. Fully absent from the record is any inquiry into educational

background or capabilities of the defendant. Even more notably, Judge Shockley failed to

explain the charges and possible punishments to Spates before accepting his waiver of right to

counsel.[4] Despite this fact, Judge Shockley made the blanket assertion that if Spates wanted to

represent himself, he "has the absolute right to do that." Pre-Trial Hr'g Tr. 11: 10-11. This

---

[4] For the four convictions which resulted from his trial, Spates faced an extremely grave maximum punishment. The rape conviction carried the possibility of *life imprisonment*, with a mandatory five year minimum sentence. See Trial Tr., Vol. 2, Commonwealth of Virginia v. Spates, CR06-130, 465:12-13 (emphasis added). For the unlawful wounding during the commission of a felony conviction, Spates faced a maximum imprisonment term of up to five years. Id. at 465:22-23. The abduction conviction allowed for a maximum of ten years in prison. Id. at 466: 11. The petit larceny conviction carried the possibility of twelve months in prison. Id. at 466:21-22.

statement is entirely inaccurate because, as case law enunciated above explains, the right to self-representation is not without limit. <u>Martinez</u>, 528 U.S. at 162. Moreover, it is clear that Spates did not fully grasp what exactly he was giving up, as he indicated that Joslin would be "second chair" of his trial while he represented himself. Pre-Trial Hr'g Tr. 14: 13.

Based on the scant and hurried line of questioning, it cannot be said that Spates assertion of the right to self-representation was knowing or intelligent. <u>See, e.g.</u> <u>Frazier-El</u>, 204 F.3d at 558; <u>see also</u> <u>Iowa v. Tovar</u>, 541 U.S. 77, 81 (2004) (requiring that a defendant is informed of the "relevant circumstances" of his charges and potential consequences of self-representation for a valid waiver to be found); <u>United States v. Venable</u>, 373 Fed. App'x 402, 406 (4th Cir. 2010) (reversing and remanding a conviction where the court "failed to inform [the defendant] of his options or conduct any inquiry into whether [he] waived the right to counsel"); <u>Townes v. United States</u>, 371 F.2d 930, 934 (4th Cir. 1966) (requiring sufficient inquiry be made so that the trial judge "may know, and the record may demonstrate, beyond cavil, that an accused knows that he has a right to employ and consult with an attorney . . . and that he voluntarily and intelligently relinquishes that right").

Spates' trial began on May 7, 2007, before the Honorable H. Thomas Padrick, Jr. ("Judge Padrick") in the Circuit Court of the City of Virginia Beach. Spates' outright rejection of his right to self-representation became even clearer. After reading the charges, Judge Padrick asked Spates if he was representing himself. Trial Tr., Vol. 1, <u>Commonwealth of Virginia v. Spates</u>, CR06-130, 4:11-12. Spates responded "[ye]s, your Honor. I was representing myself, but I don't know. *My counselor was supposed to show up today. . . I obtained counsel*. I found and retained counsel." Trial Tr. 4: 13-15, 17-18 (emphasis added). Spates' retained counsel failed to appear at trial, and Judge Padrick indicated that no continuance would be given to Spates, as the

14

Commonwealth was ready to proceed. Trial Tr. 5:4. Subsequently, Spates asked if he may speak to Joslin, who was present as stand-by counsel, in private. Trial Tr. 16:1. After doing so, Spates stated that he told Joslin that he did not think he could represent himself. Trial Tr. 17:18-20. Rather than seeing that Spates was clearly exhibiting "subsequent conduct giving the appearance of uncertainty," United States v. Gillis, 773 F.2d at 559, Judge Padrick asserted that Spates had "put himself in a box because [he] fired her. . . [ and he was] representing [him]self." Trial Tr. 18: 10-11, 16-17. Judge Padrick then proceeded with arraignment, asking Spates again if he was ready for trial to begin, to which Spates again responded that he was not. Trial Tr. 26:16-17.

Spates outright rejection of his right to self-representation, prior to the commencement of trial, became even more profound:

> THE COURT: Any questions you want to ask me?
>
> DEFENDANT: I mean, I don't - - like I told you, *no way I  can represent myself*. I don't know the procedure, what to do, how to do it; so I'll be sitting here. That's it. If Ms. Joslin not going to represent me or not going to wait for other counsel, there's nothing else I can do.
>
> THE COURT: Well, like I said sir, I was not here - -
>
> DEFENDANT: But when I signed - -
>
> THE COURT: - - when you signed this waiver that you signed - -
>
> DEFENDANT: Uh-huh.
>
> THE COURT: - - on April 23rd where you waived your right to an attorney and you wished to proceed pro se. *And I'm sure Judge Shockley went over all the ramifications with you.*
>
> DEFENDANT: *No.*
>
> THE COURT: She didn't?
>
> DEFENDANT: *No, sir. I didn't know that I was signing the waiver*

                *to represent myself pro se . . .*

Trial Tr. 27:7-28:5 (emphasis added). From this dialogue, it is overtly clear that Spates did not

wish to represent himself. Rather, he was asserting his Sixth Amendment right to counsel. Such

conduct clearly indicates that no effective waiver of counsel was made by Spates. Gillis, 773

F.2d at 559; see also Brown v. Wainwright. 665 F.2d 607, 611 (5th Cir. 1982) (holding that a

waiver of self-representation exists where a defendant retains counsel after request to

representing himself). The instant case falls squarely within the rationale espoused by Patton v.

State of North Carolina, 315 F.2d 643 (4th Cir. 1963).[5] In this case, the Fourth Circuit reversed

and remanded a conviction of the defendant Patton who, like Spates, requested counsel on the

day of trial and was denied the request. Patton and his attorney were in disagreement over

whether defendant should plead guilty, and Patton "indicated that he no longer desired the

services of his retained counsel." Patton, 315 F.2d at 644. The court informed Patton that trial

would nonetheless proceed on the same day and granted counsel's motion to withdraw,

prompting the defendant to attempt to retain subsequent counsel via telephone. Id. Said counsel

refused to take the case due to the defendant's inability to pay. Id. Patton then immediately

requested a lawyer be present, but was denied, immediately tried, and ultimately convicted of

armed robbery without being represented by counsel. Id. The Fourth Circuit found that the

defendant's request for counsel signified an invalid waiver of the right to counsel:

> [H]is final statement before being put to trial, 'but I would like to
> have a lawyer' is convincing. . . . He [] attempted to procure the
> services of other counsel. This effort, which was made with full
> knowledge of the trial court, was unsuccessful but it served to
> emphasize Patton's desire for and realization of the need of the
> assistance of counsel. We conclude that Patton could not
> reasonably be held to have intelligently and  understandingly

---

[5] Though decided before the Faretta decision, Patton remains good law.

> waived a constitutional right which he, at the very moment of
> being put to trial, continued to assert.

Patton, 315 F.2d at 646. Like Patton, Spates attempted to obtain, and in fact succeeded in the

retention of, counsel, signifying his "desire for and realization of" the need to be represented.

Therefore, the Court finds that no knowing and intelligent waiver could possibly be found in the

instant case.

The Supreme Court has instructed courts to "indulge in every reasonable presumption

against waiver" of the right to counsel.   Brewer v. Williams, 430 U.S. 387, 404 (1977).   Based

on the foregoing, the Court finds that the trial court failed to follow this instruction, resulting in

the violation of Spates' right to counsel. The colloquy Judge Shockley conducted on February 7,

2007, was insufficient to meet even the minimal standard the Fourth Circuit has espoused to

ensure a valid waiver of counsel. Moreover, Spates' conduct between the February hearing and

the commencement of trial indicates a clear rejection of the right to self-representation, as he

retained new counsel to represent him. Further, he indicated to Judge Padrick, on the record, that

the written right to counsel waiver was not explained, and he did not understand that he was

subsequently required to "proceed by [him]self." Trial Tr. 28: 7.

In finding that Spates' had validly waived his right to counsel, the Court of Appeals of

Virginia stated:

> At a February 12, 2007 hearing, appellant requested to relieve his
> court-appointed counsel and proceed *pro se*. On April 23, 2007,
> appellant signed a waiver form waiving his right to be represented
> by counsel at trial. The form indicates appellant was advised of the
> charges against him, of the potential punishment he faced, and of
> his right to be represented by counsel. Appellant waived these
> rights 'of [his] own choice, voluntarily, of [his] own free will,
> without any threats, promises, force or coercion.' The judge also
> signed the form indicating appellant was subject to oral
> examination and was advised of his rights, and 'knowingly,

> voluntarily, and intelligently waived his rights to be represented by a lawyer.' Accordingly, the record includes ample evidence that appellant freely and voluntarily waived his right to be represented by counsel at trial.

ECF No. 10-2, pp. 4-5.

This Court, however, finds that the adjudication of the Court of Appeals of Virginia, and, therefore, of that of the Supreme Court of Virginia in adopting the Court of Appeals' decision, "resulted in a decision that was contrary to . . . clearly established Federal law," 28 U.S.C. § 2254(d)(1), as established in Faretta v. California, 422 U.S. 806 (1975),which requires a trial court make a defendant aware of the "dangers and disadvantages of self-representation," so that the record may show he "knows what he is doing and his choice is made with eyes wide open." Faretta, 422 U.S. at 835. Further, the Court of Appeals' decision was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).   Notably, the transcript of Spates' February 12, 2007 pre-trial hearing was not prepared until February 2, 2012, pursuant to an Order, dated January 17, 2012, by this Court. ECF No. 15. Therefore, the state courts could not have effectively reviewed how Judge Shockley conducted the inquiry when concluding Spates validly waived his right to counsel.  Despite this fact, the Court of Appeals concluded that there was "ample evidence" to this effect. The Court feels that this conclusion simply cannot be true.

After a close-examination of the state-court judgment, this Court is "firmly convinced that [Spates'] federal constitutional right has been violated." Williams v. Taylor, 529 U.S. at 389. By continuously asserting that he was not ready, or able, to represent himself, Spates' position was not at all ambiguous or unclear. Accordingly, the Court finds that Spates' waiver of the right to counsel was invalid and recommends GRANTING federal habeas relief with respect to

Ground (3) of Spates' petition.

## III. <u>RECOMMENDATION</u>

The Court recommends that Respondent's Motion to Dismiss be DENIED, and Petitioner's Writ of Habeas Corpus be GRANTED with respect to Ground (3) of the petition, to the extent that the Court remands the case to the Circuit Court of the City of Virginia Beach for a new trial within 180 days of this Court's final judgment order. It is further recommended that Spates remain in the custody of the Department of Corrections until his new trial, but if the Circuit Court fails to re-try Spates within 180 days of this Court's final judgment order, that Spates be released from custody at the end of the 180 days.  The Court further recommends DENYING the petition as to Grounds (1) and (2).  Finally, the Court recommends DENYING Petitioner's Motion for Declaratory Judgment.

## IV.  <u>REVIEW PROCEDURE</u>

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules.  A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and

recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984), cert. denied, 474 U.S. 1019 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).


_____/s/_____<br>
Tommy E. Miller<br>
United States Magistrate Judge

Norfolk, Virginia
June 5, 2012

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to the

following:

Maceo Spates, # 1199722
Augusta Correctional Center
1821 Estaline Valley Road
Craigsville, VA 24430


Jennifer Conrad Williams, Esq.
Attorney for Respondent
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219

Fernando Galindo, Clerk


By _____
        Clerk of the Court

June 6          , 2012